# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JUDITH M. ABNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-04279-CV-C-NKL |
| ) | |
| STATE OF MISSOURI, ) | |
| DEPARTMENT OF SOCIAL SERVICES, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

After resigning her position at the Hillsboro Treatment Center, Plaintiff Judith M. Abney brought this Title VII action against the State of Missouri and six of its current or former employees for "harassment, retaliation, age discrimination and sexual discrimination creating a hostile work environment arising from Plaintiff's taking [leave pursuant to the Family and Medical Leave Act ("FMLA")]." [Compl. ¶ 5]. Plaintiff sued the State of Missouri, Department of Social Services, Division of Youth Services, as well as the following individuals, all in their individual and official capacities: Bev Struemph, Jon Anderson, Elaine Barbee, Dexter Dunbar, Phoebe Dickson and Tonia Sloan. Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 26]. For the reasons set forth below, the Motion will be granted.

1

## I. Factual Background[1]

Plaintiff is a white female who worked as a Youth Specialist for the State of Missouri, Department of Social Services, Division of Youth Services at the Hillsboro Treatment Center from June 2000 until September 2005, at which time Plaintiff resigned. The Hillsboro Treatment Center ("HTC") consists of cottages which house boys approximately 10-18 years of age. Plaintiff worked in Cottage C which housed sex offenders.

Dexter Dunbar (black male) was the HTC facility manager and Phoebe Dickson (black male) was the assistant manager. Bev Struemph (white female), Jon Anderson (white male), Elaine Barbee (white female), and Tonia Sloan (white female) all worked for the Missouri Department of Social Services.

Prior to her resignation, Plaintiff had debilitating panic attacks during her last months of employment with the state and applied for long term disability benefits. Plaintiff has been on long term disability since September 2005. Prior to going on long term disability, Plaintiff took leave from her job using FMLA annual and casual leave.

Plaintiff filed four grievances against her employer in March 2005 and three in June 2005.[2] Plaintiff's March 2005 grievances allege that Division of Youth Services

---

[1] Pursuant to Local Rule 56.1, all facts set forth in Defendants' Motion for Summary Judgment are deemed admitted for the purpose of summary judgment unless specifically controverted by Plaintiff. If controverted, the facts are viewed in the light most favorable to the non movant, Plaintiff.

[2] Hearings are not held if the complainant is on medical-related leave. Because Plaintiff took FMLA leave in June 2005, none of Plaintiff's grievances were resolved prior to her

employees violated Department policies and procedures and discriminated against her based on her gender, race and age. One of the March grievances states that on or about March 25, 2005, Plaintiff was docked 45 minutes' pay after arriving 45 minutes late to work. Plaintiff "alleges that a [black] employee was allowed to resign and was not punished in accordance with policy for his repeated tardiness and another [black female] was allowed to change her arrival time on her time sheet." [Opp. ¶ 19]. However, the black employee's attendance problems were documented by his supervisors and they were in the process of terminating him when he resigned.

Plaintiff filed three additional grievances in March, all of which related to her use of FMLA leave to attend to her sick father. Plaintiff failed to submit proper documentation of her FMLA leave prior to taking it. Upon Plaintiff's return to work and as a result of her absence, Dunbar,[3] Dickson and Sloan called Plaintiff to a meeting and threatened to dismiss her. Thereafter, Plaintiff submitted the appropriate FMLA paperwork, was credited with using FMLA leave for the days at issue and was not docked for using sick days or disciplined in any way.

Other employees, including Jeff Martin (white male), Debbie Boyer (white female), and Cheryl Stricklin (white female), also took FMLA leave during the relevant time period. Martin turned in his necessary paperwork prior to using his leave, and Boyer and Stricklin turned in their paperwork before their leave ended. Plaintiff alleges that

---

resignation.

[3] Several co-workers told Plaintiff that Dunbar was "out to get her." [Opp. ¶ 21].

Mary Francis (white female) took FMLA leave but no record exists that Francis took FMLA leave at all.

In the June grievances, Plaintiff complained that she was "written up" for failing to cover another cottage when asked to do so, and that Derrick Rhiney, a black male, was also called to cover the other cottage but was not written up. Rhiney, however, did cover the other cottage. Plaintiff later testified that she was neither "written up" nor disciplined in any other manner for failing to cover the cottage. Finally, Plaintiff's June grievances indicate that Sloan accused her of being out of her cottage and taking a computer disk containing client reports home with her. Plaintiff was never disciplined as a result of this incident.

During the relevant time period, Dunbar, Dickson and Sloan held supervisory positions over Plaintiff. Plaintiff never heard anyone, including Dunbar, Dickson or Sloan, refer to her using a racial epithet or words that were discriminatory based on gender. During her career at the treatment center, Plaintiff was never demoted or involuntarily transferred, Plaintiff's salary never decreased and Plaintiff's performance appraisals indicated she was a "successful" employee.

**II. Discussion**

    **A. Plaintiff's Timeliness**

A plaintiff must file her claims within 90 days of receiving a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). In her answers to Defendants' first interrogatories, Plaintiff verified that she received her right to sue letter from the EEOC

4

on May 27, 2005 [Defs' Mot. Ex. A]. Though Plaintiff's counsel now argues that the right to sue notice was mailed from the EEOC on May 27, 2005, and that Plaintiff received it sometime thereafter, Plaintiff has not, under oath, recanted her interrogatory answer. Therefore, Plaintiff's interrogatory answer is an undisputed admission that she received her right to sue notice on May 27, 2005. To comply with the 90 day rule, Plaintiff was required to file suit on or before August 25, 2005. Plaintiff filed suit on August 26, 2005. Therefore, Plaintiff's claims are time barred and summary judgment must be granted to Defendants.

### B. Plaintiff's Claims Against Individuals

Plaintiff's Title VII cause of action names Elaine Barbee, Dexter Dunbar, Phoebe Dickson, Tonia Sloan, Jon Anderson and Bev Struemph as defendants in their individual and official capacities. Title VII actions may not be maintained against defendants in their individual capacity. *Coller v. State of Missouri, Dep't of Economic Development*, 965 F. Supp. 1270, 1274-75 (W.D. Mo. 1997) (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)). Accordingly, even if Plaintiff's claims were timely, summary judgment would be granted to Defendants Barbee, Dunbar, Dickson, Sloan, Anderson and Struemph on Plaintiff's claims against them in their individual capacity.

### C. Plaintiff's Claims Against the State

#### 1. Plaintiff's Race and Gender Discrimination Claim

To establish a prima facie case of race or gender discrimination, Plaintiff must show the following: (1) she is a member of a protected group; (2) she was meeting the

5

legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973); *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006); *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005). Once Plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. The burden then shifts back to the plaintiff to show that the employer's proffered reason is pretext. *McDonnell Douglas*, 411 U.S. at 802-03.

To satisfy the adverse employment action prong of her prima facie case, Plaintiff must have suffered a material change in her employment status such as a demotion, reduction in pay, benefits or responsibilities. *Sallis v. University of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005); *Box*, 442 F.3d at 696. An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005)). Plaintiff's salary was not decreased, nor was she demoted, involuntarily transferred or fired. Instead, Plaintiff argues she was "forced to resign from her employment from the severe panic attacks she would suffer from the harassment she received from her supervisors." [Opp. at 8]. Plaintiff, however, has not alleged a claim for constructive discharge, and even if the issue were properly before the Court, she has failed to present sufficient proof to support such a claim.

To show constructive discharge, Plaintiff must present evidence (1) that she

6

resigned, (2) that her resignation was an objective reaction to the intolerable working environment created by her employer and (3) that the intolerable working environment was created in a deliberate attempt to compel Plaintiff's resignation. *Tatum v. City of Berkeley*, 408 F.3d 543, 551 (8th Cir. 2005).

Plaintiff falls far short of proving constructive discharge. Plaintiff was never disciplined for any of her actions with the exception of losing 45 minutes' pay, for being tardy, and Plaintiff does not dispute that she was tardy. Failing to properly document six days of leave in one month reasonably leads to scrutiny. Being wrongly accused of removing confidential information or leaving her post are not circumstances that would make your workplace intolerable.

Plaintiff clearly believes that she was persecuted at work; but, to prove she was constructively discharged, Plaintiff must show that a reasonable person would agree with her. *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." (citations omitted)); *Spears v. Missouri Dep't of Corrections and Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000) ("An employee may not be unreasonably sensitive to her working environment." (quotation omitted)).

Plaintiff has presented no medical evidence that her mental health required a resignation before resolution of her grievances. *See Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005) ("An employee who quits without giving her employer a reasonable chance to work out a problem has not been constructively discharged.").

7

There is also a good explanation for why she resigned when she did. She applied for disability benefits because of her cancer. Given this record, no reasonable juror would conclude that Plaintiff was subjected to an intolerable work environment which forced her to resign. Thus, even if Plaintiff's claims were timely, summary judgment would be granted to Defendants on Plaintiff's race and gender discrimination claims.

### 2. Plaintiff's Hostile Work Environment Claim

To establish a prima facie hostile work environment case under Title VII, Plaintiff must establish that (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 636 (8th Cir. 2006); *Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005); *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005).

Plaintiff's hostile work environment claims fail because Plaintiff has not produced evidence showing that any harassment she received was based on her gender or race. Thus, Plaintiff cannot satisfy the third requirement of the prima facie case.

Title VII does not outlaw all offensive behavior. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998 (1998) (noting that Title VII neither prohibits all verbal or physical harassment in the workplace nor is it a general civility code); *Sallis v. University of Minn.*, 408 F.3d 470, 476-77 (8th Cir. 2005) (holding that supervisors'

8

references to black employee as "tan," "dark,"and "problem employee" were rude but not severe enough to create hostile work environment). Plaintiff admits that she never heard Dunbar, Dickson or Sloan say any gender or race-based comments about her. Indeed, Plaintiff has submitted no evidence that anyone ever made an insensitive remark pertaining to her race or gender. Without some evidence that Plaintiff was harassed because of her gender or race, Plaintiff may not maintain her hostile work environment claims. Therefore, even if Plaintiff's claims were timely, summary judgment would be granted to Defendants on Plaintiff's hostile work environment claims.

### 3. Plaintiff's Title VII Retaliation Claim

To state a prima facie case of Title VII retaliation against her employer, Plaintiff must demonstrate (1) that she engaged in protected conduct by either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Burlington N. & Sante Fe Ry. Co. V. White*, 126 S. Ct. 2405, 2415 (2006). To be materially adverse, the Defendants' actions would need to dissuade a reasonable person from engaging in protected activity.

The Court need not decide whether Plaintiff has satisfied the first two requirements of the prima facie case because Plaintiff has offered no evidence of a causal connection between her filing grievances and a materially adverse action by the Defendants. Nowhere in Plaintiff's Complaint or her Opposition to Defendants' Summary Judgment

9

Motion does she allege that filing her grievances caused harassment and scrutiny. Instead, Plaintiff argues that Defendants retaliated against her because she took FMLA leave [Complaint ¶ 5], but Plaintiff also admits that she was not disciplined for using, or attempting to use, FMLA leave [Defs' Mot. ¶ 37].

Plaintiff has failed to produce any evidence of a causal connection between her Title VII protected activity and any materially adverse action by the Defendants. Thus, even if Plaintiff's claim was timely, summary judgment would be granted to Defendants on Plaintiff's retaliation claim.

### 4. Plaintiff's Age Discrimination Claim

Plaintiff's complaint also claims age discrimination under Title VII. Title VII prohibits employment discrimination or harassment based upon "race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). Accordingly, Plaintiff's age discrimination claims are not actionable under Title VII. Thus, even if Plaintiff's claims were timely, summary judgment would be granted to Defendants on all of Plaintiff's age discrimination claims.

## III. Conclusion

Accordingly, it is hereby

(1) ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

DATE:  September 20, 2006
Jefferson City, Missouri